**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 13-cv-00684-MSK-CBS

**ILS, INC., doing business as Insurance Leads SVCS,**

      **Plaintiff,**

v.

**WMM, INC., doing business as Letters Plus,**

      **Defendant.**

_____

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT**

_____

      **THIS MATTER** comes before the Court pursuant to Defendant WMM, Inc.'s Motion

for Summary Judgment (**# 50**), Plaintiff ILS, Inc.'s response (**# 51**), and WWM's reply (**# 52**).

**FACTS**

      The Court's ability to address the facts of this case is somewhat hampered by the parties'

focus on the mechanics of discovery (*i.e.* whether one party requested or supplied the documents

identified as part of Rule 26 disclosures), rather than on the pertinent facts.  Nevertheless, from

the few brief affidavits in the record, the Court gleans the following background.

      ILS searches public and private databases to identify potential insurance customers and

offers its clients – insurance agents – the opportunity to purchase customized advertising

materials to be sent to those potential insurance customers.  ILS contends that the design and

contents of the advertising materials – which ILS refers to as "templates" – constitute proprietary

trade secret information belonging to it.

In January 2010, ILS retained WMM to print and mail the advertising materials that ILS'

customers ordered.  Initially, WMM billed ILS directly for these services.  Later, ILS and WMM

agreed that WMM would bill ILS' clients (the insurance agents) directly for the printing and

mailing services.

Brett Teiken, ILS' President, states in an affidavit that the parties shared a "full

understanding that [WMM] was providing services to ILS and that the names and credit card

billing information [of the insurance agents] provided were clients of ILS alone."  Mr. Teiken

states that "ILS asked for and received verbal assurances from [WMM] that the confidential

client list and proprietary templates would not be shared with or used on behalf of any other

entity of individual.  (WMM disputes some of these contentions via its own affidavit, most

notably contending that: (i) ILS instructed WMM "to bill the individuals on the [ILS client list]

as [WMM's] own clients"; (ii) that WMM "never entered into a contract with ILS, written or

verbal"; and (iii) that "ILS never instructed us that the [client list] was secret or that any of the

insurance agents on the list were confidential customers."  However, as discussed below, for

summary judgment purposes the Court resolves any disputes of fact in favor of ILS.)

In November 2012, ILS terminated the relationship and requested that WMM return ILS'

customer list, templates, and other materials.  Mr. Teiken contends that WMM "inquired whether

ILS had any objections to [WMM] soliciting ILS' clients directly to provide other print

services," but ILS refused authorization to continue to contact ILS' clients.  Mr. Teiken states

that Paul Mortensen, WMM's principal, "became offensive and abusive" as a result.  ILS

contends that, thereafter, WMM "began an active direct marketing campaign to businesses and

individuals on ILS' confidential client list."  ILS contends that certain insurance agents who

ceased their relationship with ILS in order to retain WMM's services provided ILS with copies

of the advertising materials WMM was producing, and those materials duplicated ILS' templates.

Based on these facts, ILS asserts five claims against WMM, all under Colorado law: (i) violations of Colorado's Uniform Trade Secrets Act ("CUTSA"), C.R.S. § 7-74-101, in that its client lists and templates were "trade secrets" under that Act and were misappropriated by WMM; (ii) deceptive trade practices in violation of the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-105, in that WMM's use of ILS' name in its solicitations of ILS' clients constitutes "false representations as to the authority and/or sponsorship of ILS' approval for the solicitations"; (iii) what appears to be a common-law claim for "civil theft," in that "WMM knowingly kept" ILS' client list and templates "without authorization"; (iv) a common-law clam for "civil conspiracy," in that WMM entered into agreements with entities known as Dataman and J-Mail, for the purpose of misappropriating ILS' trade secret material and soliciting ILS' customers; and (v) intentional interference with contracts, in that WMM used improper means, such as the theft of ILS' trade secrets, to induce ILS' insurance agent clients to terminate their contracts with ILS.

WMM moves for summary judgment **(# 50)** on all of ILS' claims.  WMM's primary argument supporting that motion was that discovery had concluded; ILS had not taken any depositions (nor, apparently, had WMM); and ILS never produced to WMM any of the documents referenced in ILS' initial Rule 26 disclosures.  WMM also argues that ILS cannot establish all of the elements of each of its claims.   In response, ILS produced the affidavit of Mr. Teiken (and a second affidavit concerning the issue of damages), along with certain materials that it contended it had provided to WMM during the discovery phase of this action.  In reply,

WMM contends that ILS' response relies upon "self-serving affidavits of ILS executives, whose own statements are unsupported by admissible evidence."

## ANALYSIS

### A. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th

Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine

dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material

fact, no trial is required. The court then applies the law to the undisputed facts and enters

judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence

of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.

If the respondent comes forward with sufficient competent evidence to establish a *prima facie*

claim or defense, a trial is required. If the respondent fails to produce sufficient competent

evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of

law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**B. Admissibility of Mr. Teiken's affidavit and other preliminary matters**

Because both parties' submissions reveal a misunderstanding of the operation of Rule 56

and the types of evidence pertinent to the summary judgment inquiry, the Court pauses briefly to

address that matter.

As pertinent here, Fed. R. Civ. P. 56(a) permits WMM to attempt to "show[ ] that there is

no genuine dispute as to any material fact and [that WMM] is entitled to judgment as a matter of

law." To do so, WMM is obligated to identify those pertinent facts as to which there is no

genuine dispute and to support those factual assertions by either: (i) affirmatively pointing to

"depositions, . . . affidavits or declarations, stipulations, . . . admissions, interrogatory answers,

or other materials" establishing the fact in question; or (ii) showing that certain specified

materials "do not establish the . . . presence of a genuine dispute, or that the adverse party can

not produce admissible evidence to support that fact." Fed. R. Civ. P. 56(c)(1)(A), (B). In other

words, WMM may either demonstrate that ILS admits a particular fact (*e.g.* ILS' witness admits

that "the traffic light was red when I went through it"), or show that ILS lacks the ability to supply evidence on that fact (*e.g.* ILS' witness testifies "I don't know what color the traffic light was when I went through it") coupled with WMM's affirmative proof of its version of events (*e.g.* that the light was red).

When faced with a motion against it, a party like ILS with the burden of proof for its claims bears the burden of coming forward with sufficient admissible evidence that, if taken as true, establishes a genuine dispute of material fact.   To do so via affidavit, ILS must produce one or more affidavits that: (i) are based on the personal knowledge of the affiant, (ii) set out facts that would be admissible in evidence, and (iii) show that the affiant is competent to testify on the matters states. Fed. R. Civ. P. 56(c)(4).

Here, the Court's focus is on whether ILS can come forward with sufficient admissible evidence to establish the elements of each of its claims.  Therefore, the Court begins its analysis with Mr. Tieken's affidavit.  Mr. Tieken identifies himself as the President of ILS and states that the contents of the affidavit reflect "my own personal knowledge."  As discussed more fully below, some of Mr. Tieken's allegations in the affidavit are merely conclusions, and thus, not "facts that would be admissible in evidence" under Rule 56(c).  However, other portions of Mr. Tieken's affidavit are matters as to which Mr. Tieken's oral testimony on those points would be admissible at trial.  Finally, there is no apparent impediment to Mr. Tieken's competence to testify.  Thus, Mr. Tieken's affidavit – or at least parts thereof – are properly before this Court for summary judgment purposes.  WMM complains that Mr. Tieken's affidavit is "self-serving," but nothing in Rule 56, nor any other authority, precludes the Court from considering "self-

serving" affidavits that otherwise meet the requirements of Rule 56(c)(4).[1]  *See Sanchez v. Vilsack*, 695 F.3d 1174, 1180 n. 1 (10th Cir. 2012).

WMM's initial motion cited to the following items evidence in support of its own factual contentions: (i) Mr. Mortensen's own affidavit, (ii) ILS' initial and supplemental Rule 26(a) disclosures, (iii) an October 2013 e-mail chain, apparently reflecting WWM's counsel requesting that ILS' counsel produce copies of documents referenced in ILS' initial disclosures and its response to WWM's request for production; and (iv) ILS' responses to Interrogatories, Requests for Production, and Requests for Admission by former Defendants in this action.   Of these, Mr. Mortensen's own affidavit is properly before the Court to the extent it complies with Rule 56(c)(4), and ILS' responses to interrogatories and requests for admissions are types of permissible evidence specifically identified in Rule 56(c)(1)(A).  Rule 26(a) disclosures and responses to requests for production, on the other hand, are not factual averments at all, and thus, are not "evidence" for summary judgment purposes.  Rule 26(a) disclosures are simply that: disclosures of witnesses and documents the party knows of any may use to support its contentions, but not "evidence" in and of itself.  The e-mail chain is of no consequence, as the record does not reflect that WMM ever sought to compel ILS to produce the documents in question pursuant to Fed. R. Civ. P. 37.[2]

---

[1]      Indeed, the characterization of an affidavit as "self-serving" is largely meaningless. Nearly every affidavit proffered by a party representative is done for the purpose of serving that party's interests.  What WMM appears to mean by "self-serving" is either "incredible" or "uncorroborated," but, as noted above, the Court does not engage in credibility determinations at the Rule 56 stage, nor does Rule 56 require corroboration of otherwise admissible evidence.

[2]      In any event, ILS' response brief asserts, without subsequent contradiction by WMM's reply, that ILS produced certain documents to WMM on August 29, 2013.  Beyond Mr. Tieken's own affidavit, those are the only documents in the record that ILS relies upon here.  Nothing in the record indicates that WMM subsequently sought preclusive sanctions against ILS based on the late production of these documents, and thus, there is no basis for this Court to refuse to consider them.

Thus, as the analysis below reveals, the Court has conducted its summary judgment evaluation based on: (i) any non-conclusory assertions made on the basis of personal knowledge in Mr. Tieken's affidavit; (ii) any non-conclusory assertions made on the basis of personal knowledge in Mr. Mortensen's affidavit; (iii) any admissions or responses to interrogatories by ILS; and (iv) the documents produced by ILS to WMM on August 29, 2013.  With these materials in mind, the Court turns to the sufficiency of ILS' showing as to each of its claims.

### C.  CUTSA claim

To prove a claim for misappropriation of trade secrets under CUTSA, ILS must show: (i) that it possessed a "trade secret," that is "any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value"; (ii) that WMM "misappropriated" that trade secret – namely, that WMM made use of that trade secret without ILS' consent; and (iii) that such misappropriation resulted from WMM's use of "improper means," namely "theft, bribery, misrepresentation, [or] breach of a duty to maintain secrecy." C.R.S. § 7-74-102(1), (2)(b), (4).

WMM first alleges that ILS cannot show that its client list and "templates" constitute protected "trade secrets."  An essential character of a "trade secret" is that the owner "must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes."  C.R.S. § 7-74-102(4).  In considering whether a given item of information constitutes a trade secret, the Court can consider many factors, including the extent to which the information is known outside the plaintiff's business, the extent to which it is known by employees within the plaintiff's business, the precautions taken by the holder of the trade secret to guard the secrecy of that information, the

economic value of the information to competitors, the amount of money expended by the holder to acquire the information, and the amount of money and effort that a competitor would need to duplicate it.  *Saturn Systems, Inc. v. Militare*, 252 P.3d 516, 521-22 (Colo.App. 2011).  The secret must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy," but "extreme and unduly expensive procedures need not be taken" by the holder to preserve it.  *Id.* at 522.

Here, Mr. Tieken's affidavit contends, in largely conclusory terms, that the "templates" were "proprietary," "developed at the expense of time and money capital by ILS" and were "for the sole and exclusive use of ILS."  He identifies the ILS client list as being "confidential," without otherwise elaborating on the circumstances of its creation and development.  There is some evidence of efforts that ILS undertook to secure the secrecy of this material, as Mr. Tieken states that "ILS asked for and received verbal assurances from [WWM] that the confidential client list and proprietary templates would not be shared with or used on behalf of any other entity or individual."  The fact that WMM subsequently requested ILS' permission to market to the agents on the client list suggests both that WMM believed the list to have some economic value in excess of what WMM could generate from its own efforts, and that WMM recognized ILS' ownership of the information on the list.  Although the record is decidedly underdeveloped on this point, the Court finds that Mr. Tieken's allegations are sufficient to create a genuine dispute of fact over whether the client list (and perhaps templates) constitute "trade secrets" under CUTSA.

Mr. Tieken alleges facts sufficient to demonstrate a genuine issue as to whether WMM subsequently made use of ("misappropriated") the client list and template information.  He states

9

that ILS clients contacted him to report having been solicited by WMM after November 2012.[3]

ILS submits certain documents reflecting such solicitation, most notably, a December 2012

mailing from Mr. Mortensen to Mitchell Lichti, acknowledging that WMM had formerly

contacted Mr. Licthi as an ILS client, but was not offering to provide those same services

independent of ILS.[4]  (Notwithstanding WMM's argument that ILS has not come forward with

evidence that Mr. Lichti was on ILS' client list, the body of the letter itself makes clear that

WMM's prior contacts with Mr. Lichti were due to his affiliation with ILS.)  Mr. Mortensen's

own affidavit essentially concedes that WMM did market to some individuals on ILS' client list

after November 2012, although WMM contends that it did so only at these clients' invitation.

Accordingly, there is a genuine issue of fact requiring trial as to the element of misappropriation

as well, at least with regard to the client list.

Finally, the record sufficiently establishes a genuine dispute as to whether WMM acted

via "improper means."  As above, Mr. Tieken's affidavit states that he secured a promise from

WMM that ILS' information would not be used by WMM for any purpose other than servicing

ILS' needs.  To the extent WMM made use of the client list or templates after the parties ceased

---

[3]    Arguably, Mr. Tieken's recitation of statements made to him by ILS clients are hearsay, and ILS does not produce affidavits from the clients themselves.  However, WMM's reply brief does not specifically challenge Mr. Tieken's statements on hearsay grounds, and thus, the Court does not consider at this time whether Mr. Tieken's statements might possibly fall within a recognized exception to the hearsay rule.

[4]    This exhibit raises several evidentiary concerns.  The copy in the Court's record does not appear to be completely authentic, as the letterhead contains gibberish characters, possibly due to errors in scanning the document.  Moreover, it appears that Mr. Tieken lacks the ability to authenticate the letter, as he is neither the sender nor a designated recipient.  Once again, however, WMM does not object to the Court's consideration of the letter on these grounds -- rather, WMM argues that Court should consider the letter as establishing a different proposition, and that it "speak[s] for [itself]" – and thus, the Court does not exclude it from consideration despite its evidentiary flaws.  Needless to say, however, that ILS will be required to tender admissible evidence at trial, and the failure to produce an authentic document, with foundation laid by a competent witness, may result in the Court granting judgment as a matter of law in favor of WMM, and may even result in the imposition of appropriate sanctions.

their partnership in November 2012, WMM's use would thus be "improper means" insofar as it reflected "breach of a duty to maintain secrecy," in violation of WMM's promise. C.R.S. § 7-74102(1).

Accordingly, the Court finds that ILS' claim for misappropriation of trade secrets requires trial.

### D. CCPA claim

ILS' claim under the CCPA is somewhat ill-defined in ILS' Complaint and entirely omitted from ILS' summary judgment response brief. Assuming ILS is not intentionally surrendering this claim by failing to address it, the Court would nevertheless grant summary judgment to WMM on this claim on the merits. As set forth in the Complaint, the crux of ILS' claim is that WMM engaged in deceptive trade practices by "us[ing] the name of ILS in the improper solicitations," creating a "false representation[ ] as to authority and/or sponsorship of ILS' approval for the solicitations." C.R.S. § 6-1-105(1)(b). The record does not bear out ILS' contentions. Mr. Tieken's affidavit does not expressly address this point, and the only document in the record in which WMM mentions ILS is the December 2012 letter to Mr. Lichti discussed above. That letter states, in pertinent part, "Last month, we were advised by ILS that after three years of providing their direct mail services, effective immediately, we would no longer be mailing for them. We would like to mention that we enjoyed the professional relationship we had with you . . . . [WMM] would not like to provide an additional service. . . ."

This excerpt makes clear that WMM never represented that its solicitation of Mr. Lichti (or anyone else) was done with ILS' sponsorship or approval. To the contrary, the letter makes clear that ILS had severed its relationship with WMM (over WMM's apparent objection), but that WMM wished to continue providing services anyway. No reasonable person could conclude

that this language implied that ILS was supportive of WMM's solicitation, and thus, WMM is entitled to summary judgment on ILS CCPA claim.

### E. Civil theft claim

Although the source of this claim is not identified in the Complaint, ILS' summary judgment response suggests that it arises pursuant to C.R.S. § 18-4-405. That statute provides that "the owner [of property obtained by theft, robbery, or burglary] may maintain an action . . . against the taker thereof." Separately, C.R.S. § 18-4-408, entitled "Theft of trade secrets – penalty," states that "any person who, with intent to deprive or withhold from the owner thereof the control of a trade secret, or with an intent to appropriate a trade secret to his own use . . ., steals or discloses to an unauthorized person a trade secret, or without authority, makes or causes to be made a copy of an article representing a trade secret, commits theft of a trade secret." Although no Colorado court appears to have considered the question, this Court will assume, without necessarily finding, that theft of a trade secret under C.R.S. § 18-4-408 constitutes a type of theft for which a civil remedy is provided by C.R.S. § 18-4-405.

Stripped of the awkward construction common to criminal statutes, the text of C.R.S. §18-4-408 discloses two alternative *mens rea* elements and two alternative *actus reus* elements. To commit the crime, a person must either act "with the intent to . . . withhold from the owner [ ] the control of a trade secret" or act "with an intent to appropriate a trade secret to his own use or to the use of another." The necessary act must either be "steal[ing] or disclos[ing] to an unauthorized person a trade secret" or " mak[ing] or caus[ing] to be made a copy of an article representing a trade secret" without authorization.

ILS has failed to come forward with evidence establishing the necessary *actus reus* elements of this claim by WMM. Mr. Tieken's affidavit establishes that ILS initially gave its

client list and templates over to WMM to be used in the course of the parties' mutual business.

Later, ILS agreed to have WMM directly bill ILS' clients and process their payments.  Mr.

Tieken states that when he terminated the business arrangement, he requested that WMM return

the "notebook" that ILS has provided  to it, and that WMM did so.  Beyond that, neither Mr.

Tieken's affidavit, nor any other evidence in the record, discloses the means by which WMM

was able to later solicit ILS' clients.[5]  There is no evidence in the record to suggest that WMM

committed the act of "stealing" ILS' information, in the sense of removing it from ILS'

possession without ILS' permission, nor that WMM disclosed that information to "an

unauthorized person" beyond those at WMM whom ILS initially entrusted with the information.

Nor is there any evidence that WMM "ma[d]e . . . a copy of an article representing a trade

secret" without ILS' authorization.  ILS does not, for example, allege that WMM made a

physical copy of the "notebook" in which the client list was maintained.  Although one might

infer that WMM had to have made its own copy of the client list at some point in time, nothing

in the record suggests that, when WMM did so, it was "without authorization" of ILS.  Indeed,

given that ILS consented to let WMM bill the clients directly, it is entirely likely that WMM

made its own copy of the client list with ILS' authorization for that very purpose, and later used

that then-authorized copy of the list to engage in post-November 2012 solicitations.

---

[5]      ILS' brief promises to supply the affidavit of Megan Doumer (spelled "Dumar' elsewhere
in ILS' brief) to establish facts about a February 2013 meeting at WMM where "the intent to use
Plaintiff's trade secrets was discussed and a plan to appropriate the trade secret through
unauthorized use of Plaintiff's client list was formulated."   (The brief states that "due to
Plaintiff's counsel moving physical offices and Megan Doumer's schedule, Plaintiff's counsel
was unable to procure Ms. Doumer's affidavit by this Response's filing deadline.)  Putting aside
the question of whether the Court could or should rely on a late-tendered affidavit of this type,
the Court notes that, contrary to ILS' counsel's promise, no affidavit of Ms. Doumer was ever
filed with the Court.  Thus, the Court disregards any of ILS' contentions about what Ms.
Doumer's affidavit might have said.

Because ILS has not come forward with evidence by a person with sufficient personal knowledge to establish the mechanism by which WMM obtained/maintained a copy of ILS' trade secrets, WMM is entitled to summary judgment on ILS' civil theft claim.

### F.  Civil conspiracy

The Court will not belabor the discussion of the civil conspiracy claim.  The only evidence in the record that even touches on any alleged conspiracy is a single paragraph in Mr. Tieken's affidavit that reads as follows:

> ILS learned that [WMM] met at the (sic) Jayson Kline at the offices of J-Mail, Inc. a former defendant in this lawsuit, in March 2013.  We learned the meeting was focused on efforts to improperly divest ILS of their valuable business property without consent or compensation.  ILS disclosed the name and contact information for a former employee of J-Mail, Ms. Megan Dumar, as a fact witness. [WMM] never sought to depose Ms. Dumar.  Ms. Dumar will testify about [WMM's] collusion.

As noted above, ILS never proffered any affidavit from Ms. Dumar/Doumer.

In the absence of Ms. Dumar's affidavit, the Court is left only with Mr. Tieken's conclusory assertion that ILS "learned" – from unknown sources (if not Ms. Dumar) – of WMM's unspecified "efforts to improperly divest ILS of their valuable business property."  Mr. Tieken does not specify what these "efforts" were, why they were "improper," or even identify what "valuable business property" was at issue.  Such conclusory assertions are insufficient to present a genuine dispute of fact, and thus, WMM is entitled to summary judgment on ILS' civil conspiracy claim.

### G.  Tortious interference

To establish a claim of tortious interference with contract under Colorado law, ILS must show: (i) WMM was aware of a contract between ILS and ILS' clients; (ii) WMM intended to cause the client to breach that contract; (iii) WMM acted to induce the party to breach the

contract; and (iv) WMM acted "improperly" in doing so. *Slater Numismatics, LLC v. Driving Force, LLC*, 310 P.3d 185, 189 (Colo.App. 2012). The determination of whether the action was "improper" requires consideration of several factors, including the nature of the conduct involved, WMM's motives, social interests in freedom of action, etc. *Trimble v. City and County of Denver*, 697 P.2d 716, 726 (Colo. 1985).

Here, Mr. Tieken alleges that ILS "contracted with [its clients] . .. requir[ing] these customers to use the fulfillment center identified by ILS." This is the only mention of a contractual agreement between ILS and its clients, and it discloses nothing about the term of any such contract, the grounds upon which either party may elect to terminate it, or any other requirements of the contract, other than the requirement that the client "use the fulfillment center identified by ILS." Assuming, without necessarily finding, that WMM's solicitations to the clients to use WMM's mailing services, instead of whatever replacement mailing services ILS obtained after November 2012 (and Mr. Tieken's affidavit makes no mention of ILS designating any other "fulfillment center"), the Court cannot say that WMM's solicitations to ILS' customers constituted an inducement to them to breach their contract with ILS. If, for example, the contract between ILS and the client was terminable at the will of either party, WMM's suggestion that the client invoke his or her right to terminate the contract with ILS and retain WMM for mailing services was not an inducement of a "breach" or nonperformance of the contract by the client. *See Friedman & Son, Inc. v. Safeway Stores, Inc.*, 712 P.2d 1128, 1131 (Colo.App. 1985) ("an allegation of unfair dealing in the termination of an at-will contract does not state a valid claim for which relief can be granted under Colorado law").

Accordingly, WMM is entitled to summary judgment on ILS' tortious interference with contract claim.

## CONCLUSION

For the foregoing reasons, WMM's Motion for Summary Judgment **(# 50)** is **GRANTED IN PART**, insofar as WMM is entitled to summary judgment on ILS' claims of violation of the CCPA, civil theft, civil conspiracy, and tortious interference with contract, and **DENIED IN PART**, insofar as ILS' misappropriation of trade secrets claim will proceed to trial.  The parties shall promptly begin preparation of a Proposed Pretrial Order in conformance with the Trial Preparation Order **(# 32)** and shall jointly contact chambers immediately to schedule a Pretrial Conference.

Dated this 3rd day of September, 2014.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge

16